# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| CG MEDICAL ASSOCIATES, INC. d/b/a<br>CAREFIRST URGENT CARE, | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **CASE NO. 1:22-cv-00308-DRC** |
| | ) | **Judge Douglas R. Cole** |
| **v.** | ) | |
| | ) | **Removed from:** |
| RETS TECH CENTER, INC.; | ) | **Common Pleas Court,** |
| EFC TRADE, INC.; AND | ) | **Hamilton County, Ohio** |
| EDUCATION AFFILIATES, INC.,| ) | **CASE NO. A-2201478** |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS EFC TRADE, INC. AND EDUCATIONAL AFFILIATES, INC.'S ANSWER TO COMPLAINT AND COUNTERCLAIM AND CROSS-CLAIM IN INTERPLEADER

Defendants EFC Trade, Inc. ("EFC") and Education Affiliates, Inc. ("Education Affiliates") (collectively referred to herein as "Defendants"), by and through undersigned counsel and Rule 22 of the *Ohio Rules of Civil Procedure*, hereby file this Answer to Plaintiff's CG Medical Associates, Inc. ("CareFirst" or "Plaintiff") Complaint and Counterclaim/Cross-Claim for Interpleader.[1] Unless expressly admitted herein, Defendants deny the material allegations of the Complaint ("Compl.") and demand strict proof thereof.

Defendants respond to the individually numbered allegations of the Complaint as followed:

## JURISDICTION AND VENUE

1.      Upon information and belief, admitted.

---

[1] RETS Tech Center, Inc. ("RETS") does not join in this answer as RETS was fraudulently joined in the original complaint, and is therefore, not a proper defendant. As such, no answer by RETS is required.

1

2.      Upon information and belief, this allegation is admitted. However, it is not relevant as RETS is not a proper party to this action.

3.      Admitted.

4.      Admitted.

5.      The allegations in paragraph 5 of Plaintiff's Complaint constitute legal theories, opinions or conclusions to which no response is required. To the extent a response is required, Defendants deny that venue is proper in the Court of Common Pleas for Hamilton County, Ohio.

6.      The allegations in paragraph 6 of Plaintiff's Complaint constitute legal theories, opinions or conclusions to which no response is required. To the extent a response is required, Defendants deny that the Court of Common Pleas for Hamilton County, Ohio has jurisdiction over this matter.

## FACTS

7.      In response to the allegations in paragraph 7 of Plaintiff's Complaint, Defendants reassert its responses to paragraphs 1 through 6 above, and incorporates the same as if fully set forth herein, and further incorporates its affirmative defenses in response thereto.

8.      Denied.

9.      Denied.

10.     Denied.

11.     Defendants are without sufficient information to admit or deny the allegations in this paragraph, and demand strict proof thereof.

12.     Denied.

13.     EFC agrees that it has had communications with Plaintiff, otherwise the allegations of paragraph 13 are denied.

2

## COUNT ONE
## BREACH OF CONTRACT

14.     In response to the allegations in paragraph 14 of Plaintiff's Complaint, Defendants reassert its responses  to paragraphs 1 through 13 above, and incorporates the same as if fully set forth herein, and further incorporates its affirmative defenses in response thereto.

15.     Denied.

16.     Denied.

17.     Denied.

Defendants deny that Plaintiff is entitled to the relief prayed for in Count One of its Complaint.

## COUNT TWO
## UNJUST ENRICHMENT

18.     In response to the allegations in paragraph 18 of Plaintiff's Complaint, Defendants reassert its responses  to paragraphs 1 through 17 above, and incorporates the same as if fully set forth herein, and further incorporates its affirmative defenses in response thereto.

19.     Denied.

20.     Denied.

Defendants deny that Plaintiff is entitled to the relief prayed for in Count Two of its Complaint.

## REQUEST FOR RELIEF

In response to Plaintiff's Request for Relief at the conclusion of Plaintiff's Complaint, Defendants admit that Plaintiff requests the relief stated in subparagraphs A through C, but deny that Plaintiff is entitled to the relief requested.

3

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's claims are barred for lack of subject matter jurisdiction over Defendants and because venue is improper.

### SECOND DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### THIRD DEFENSE

Defendants deny each and every allegation in Plaintiff's Complaint except as specifically admitted herein and demands strict proof thereof.

### FOURTH DEFENSE

Defendants deny that they are required to respond to the allegations in Plaintiff's Complaint to the extent the allegations constitute legal conclusions.

### FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in party, by the doctrine of waiver.

### SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in party, by the doctrine of estoppel.

### SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in party, by the equitable doctrine of laches.

### EIGHTH DEFENSE

Plaintiff's claims are barred by the doctrines of ratification, consent, accord and satisfaction, release, authorization, and/or by the Plaintiff's own conduct or the Plaintiff's own knowledge.

4

**NINTH DEFENSE**

Plaintiff's claims fail, in whole or in part, because Plaintiff failed to mitigate its damages.

**TENTH DEFENSE**

Defendants hereby raise each and every affirmative defense required to be pled by the applicable rules of civil procedure should said defenses become applicable as this action proceeds. In addition, Defendants reserve the right to assert other defenses and claim when and if they become appropriate during this action.

**COUNTERCLAIM AND CROSS-CLAIM IN INTERPLEADER ON BEHALF OF DEFENDANTS EFC TRADE, INC. AND EDUCATIONAL AFFILIATES, INC.**

Defendants EFC Trade, Inc. ("EFC") and Education Affiliates, Inc. ("Education Affiliates") (collectively referred to herein as "Defendants"), by and through undersigned counsel, hereby file this Counterclaim and assert the following claim for interpleader against Plaintiff CG Medical Associates, Inc. ("CareFirst" or "Plaintiff"), as follows:

**PARTIES**

1.      Plaintiff CareFirst is an Ohio corporation with an address of 7300 Beechmont Avenue, Cincinnati, OH 45230. (*See* Compl. ¶ 1).

2.      Defendant/Counterclaim Plaintiff EFC is a Delaware corporation with an address of 251 Little Falls Drive, Wilmington, DE 19808. EFC is the legal entity which owns Fortis College.

3.      Defendant/Counterclaim Plaintiff Education Affiliates is a Delaware corporation with an address of 251 Little Falls Drive, Wilmington, DE 19808. Education Affiliates is the corporate parent company of EFC.

5

## JURISDICTION AND VENUE

4.      As addressed in Defendant's Notice of Removal, Defendant RETS was improperly joined for the sole purpose of defeating diversity.

5.      This Court has original jurisdiction over this case under 28 U.S.C. § 1332(a), which provides in pertinent part that "[t]he courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between. . . (1) citizens of different States . . ." *See* 28 U.S.C. § 1332(a).

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) because this is the judicial district in which Plaintiff conducted activity that gave rise to Defendants' claims for relief.

## FACTUAL ALLEGATIONS

7.      On or about 2019, EFC and Education Affiliates entered into a verbal arrangement in which CareFirst would provide medical services to students of EFC.

8.      CareFirst was directed to not bill students and employees treated and, in turn, EFC was to pay CareFirst directly.

9.      On or about November 5, 2021, counsel for CareFirst contacted Fortis College alleging it "ha[d] yet to pay for a single one of [its students and employees'] visits." *See* Exhibit A (the "Letter").

10.     However, Fortis College had, in fact, made two payments to CareFirst for invoices dated from on or about October 1, 2019 to March 31, 2020. These invoices totaled $31,983.00. The checks made payable to CareFirst totaling $31,983.00 are attached hereto as Exhibit B.

11.     After its initial payment, EFC stopped making payments to CareFirst, because CareFirst admitted that it created incorrect invoices and agreed to rectify any mistakes. CareFirst

6

never rectified the incorrect invoices, which inherently prevented EFC from making any further payments.

12.     Shortly after receipt of CareFirst's Letter, counsel for Education Affiliates, on behalf of its EFC affiliates, and counsel for CareFirst corresponded, on or about November 23, 2021, regarding a spreadsheet that counsel for CareFirst provided. However, the provided accounting was not complete. Counsel for EFC/Education Affiliates requested a spreadsheet including, but not limited to, the following: (1) patient name; (2) each amount owed; (3) date of service; (4) description of the service provided; (6) charge for that service; and (7) location of the service.

13.     In this correspondence, counsel for EFC/Education Affiliates also noted that this was a time critical matter, as EFC Students were receiving invoices from "Quest" and a third-party debt collection company. This third-party debt collection company was demanding payment from students and employees and threatening to submit unpaid bills to credit agencies.

14.     Within this November 23, 2021 correspondence, counsel for EFC/Education Affiliates requested that CareFirst instruct these agencies to stop all collection efforts and pull back any reporting to credit agencies, as both EFC and CareFirst worked together to resolve all discrepancies.

15.     On or about December 14, 2021, after receiving no response, counsel for EFC/Education Affiliates again contacted counsel for CareFirst regarding his previous requests.

16.     While EFC/Education Affiliates waited to receive a response from CareFirst, EFC students and employees were still wrongfully and constantly contacted by Quest and third-party debt collection agencies.

7

17.     On or about January 11, 2022, counsel for EFC/Education Affiliates sent counsel for CareFirst a letter, as there had been no response in months and students/employees were still being contacted by third-party debt collection agencies. *See* Exhibit C (the "January 11 Letter").

18.     Among other things, the January 11 Letter detailed the following: (1) EFC had been willing to remit the amounts which were allegedly owed, but had not been able to determine with any degree of certainty the precise amount which is owed; (2) despite multiple attempts by EFC, CareFirst had not furnished clear documentation regarding such payments; (3) unaffiliated third-parties continued to bill and threaten students and employees for amounts that should have been paid to those third parties by CareFirst; and (4) numerous students and employees paid amounts directly to the third-parties, which they should not have been obliged to do. *Id.*

19.     On or about January 11, 2022, counsel for CareFirst stated that the matter was being reassigned to another attorney, but that CareFirst would address the previous letter from EFC/Education Affiliates and ask Quest and the third-party agencies to stop collection efforts on EFC students and employees.

20.     On or about March 2, 2022, counsel for EFC/Education Affiliates yet again contacted counsel for CareFirst for lack of response.

21.     On or about March 21, 2022, counsel for CareFirst finally provided the requested spreadsheet with patient information.

22.     After providing Defendants with very little time to review the spreadsheet, confirm accuracy, and remit funds, CareFirst filed its Complaint against Defendants in the Court of Common Pleas for Hamilton County, Ohio on or about April 26, 2022.

8

23.     On or about June 1, 2022, Defendants filed their Notice of Removal to the United States District court for the Southern District of Ohio, as RETS was fraudulently joined to prevent diversity.

24.     Based on the foregoing, Defendants cannot determine, without peril, the proper sum which is owed and payable. As a result, Defendants have been compelled to retain counsel to defend this action and file this counterclaim and cross-claim in interpleader.

## **INTERPLEADER FOR CERTAIN SUM**

25.     Defendants incorporate by reference each preceding paragraph as if fully set forth herein.

26.     Due to the issues described above, Defendants cannot determine, without peril, the precise amounts owed to CareFirst for medical services received by EFC students and employees.

27.     Defendants acknowledge that funds were due. However, Defendants have made payments to CareFirst for medical services provided, and, therefore, the actual amount owed is in dispute.  .

28.     Unless and until the potentially conflicting amounts of funds owed are disposed of in a single proceeding, Defendants remain subject to multiple litigation based on conflicting claims and face substantial risk of suffering duplicate or inconsistent rulings on liability for payment of the medical services rendered. Moreover, its students and employees continue to be harassed improperly by debt collectors as a result of CareFirst's actions.

Defendants are ready, willing, and able to pay the proper funds owed into the Registry of the Court upon issuance of an order authorizing the deposit of said interpleader funds.

9

**COUNT ONE**
**ACCOUNTING**

29.     Defendants incorporate by reference each preceding paragraph as if fully set forth herein.

30.     Defendants are unable to determine how much money is due based on services provided and invoices already paid.

31.     Defendants seek a determination by the Court of what may be due to the respective parties as a result of the relationship between them.

32.     Defendants have set forth the operative facts requiring such request for relief.

**COUNT TWO**
**PRELIMINARY INJUNCTION**

33.     Defendants incorporate by reference each preceding paragraph as if fully set forth herein.

34.     EFC students and employees have been contacted by Quest and third-party collection companies and have been ordered to pay funds owed to these third-parties by CareFirst.

35.     Said third-party companies have threatened students with reports to credit unions for non-payment.

36.     Defendants, and employees and students of EFC, will suffer irreparable injury if Defendants' requested relief is not granted.

37.     Said harm to Defendants, and employees and students of EFC, outweighs any damage this proposed injunction may cause to Plaintiff.

38.     Defendants are requesting this court grant a preliminary injunction enjoining Plaintiff from seeking collection from EFC employees and students.

## COUNT THREE
## EFC'S CLAIM FOR NEGLIGENT INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

39.     EFC incorporates by reference each preceding paragraph as if fully set forth herein.

40.     A valid contract existed between EFC and each of its students.

41.     CareFirst knew of these contracts, yet negligently interfered with the contracts without justification by harassing these students for monies not owed directly by the students.

42.     CareFirst negligently allowed third-party debt collectors to harass EFC students and employees seeking to recover from each of them.

43.     EFC has been damaged as a result of such interferences with its aforementioned contractual relationship.

## COUNT FOUR
## INTENTIONAL INTERFERENCE WITH A CONTRACTUAL RELATIONSHIP

44.     EFC incorporates by reference each preceding paragraph as if fully set forth herein.

45.     A valid contract existed between EFC and each of its students.

46.     CareFirst knew of these contracts, yet intentionally interfered with the contracts without justification by harassing these students for monies not owed directly by the students.

47.     CareFirst intentionally allowed third-party debt collectors to harass EFC students and employees seeking to recover from each of them.

48.     EFC has been damaged as a result of such interferences with its aforementioned contractual relationship.

## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request that this Court enter a judgment in Defendants as follows:

17718840v1

1.     That the aforementioned payments for medical services be accepted into the Registry of this Court and held in an interest-bearing account for future disbursement according to the judgment of this Court;

2.     That the Court adjudicate the issue of the precise amount CareFirst and Defendants are respectively owed based on the treatments provided and payments already made; and

3.     That Defendants may be awarded such other and further relief as the Court may deem just and proper.

Respectfully submitted this 9th day of June, 2022.

*/s/ Alexandra B. Parriman*

Alexandra B. Parriman (0098912)
Bricker & Eckler LLP
201 East Fifth Street, Suite 1110
Cincinnati, Ohio 45202
Telephone: 513-870-6578
Fax: 513-870-6699
aparriman@bricker.com

*Attorney for Defendants EFC Trade, Inc. and Education Affiliates, Inc.*

12

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that a copy of the foregoing was served via the court's e-filing system, or U.S. Mail, on this 9th day of June, 2022, upon the following parties or their counsel:

Christopher H. Hulburt
Elizabeth M. Johnson
LINDHORST & DREIDAME
312 Walnut Street, Suite 3100
Cincinnati, OH 45202
(513) 421-6630
churlburt@lindhorstlaw.com
*Attorneys for Plaintiff*

*/s/ Alexandra B. Parriman*
Alexandra B. Parriman

13

# LINDHORST & DREIDAME

JAMES L. O'CONNELL
JAY R. LANGENBAHN (1)
JAMES H. SMITH III
MICHAEL F. LYON
THOMAS E. MARTIN
JAMES F. BROCKMAN
BARRY F. FAGEL (1)
BRADLEY D. McPEEK
MATTHEW C. CURRAN
PAUL J. VOLLMAN (1)
CHRISTOPHER H. HURLBURT (1)
CULLEN P. ROONEY (1)
ELIZABETH M. JOHNSON (1)

**A LEGAL PROFESSIONAL ASSOCIATION**

312 WALNUT STREET, SUITE 3100
CINCINNATI, OHIO 45202-4048
TELEPHONE: (513) 421-6630
FACSIMILE: (513) 421-0212
WWW.LINDHORSTLAW.COM

**WRITER'S DIRECT DIAL**
(513) 345-5777
churlburt@lindhorstlaw.com

AMBROSE H. LINDHORST 1913-1997
ROBERT F. DREIDAME 1914-1978
WILLIAM J. WALSH 1919-1996
LEO J. BRESLIN 1928-2000

_____

(1) ALSO ADMITTED IN KENTUCKY

November 5, 2021

**VIA EMAIL and 2-DAY UPS DELIVERY**
Mr. Tod M. Gibbs, President
Fortis College Columbus
4151 Executive Parkway, Suite 120
Westerville, OH 43081
tgibbs@fortiscollege.edu

**VIA EMAIL and 2-DAY UPS DELIVERY**
Ms. Amanda Sulek, Director of Finance
Fortis College Columbus
4151 Executive Parkway, Suite 120
Westerville, OH 43081
asulek@fortiscollege.edu

RE:     Outstanding Amounts Owed to CareFirst Urgent Care

Dear Mr. Gibbs and Ms. Sulek:

Our office represents CG Medical Associates, Inc., dba CareFirst Urgent Care ("CareFirst"). I have been retained to pursue payment of past due invoices owed to my client by Fortis College Columbus ("Fortis") for services rendered to Fortis students at CareFirst clinics throughout southern Ohio. CareFirst provided these services pursuant to an arrangement with Fortis that had CareFirst treat area students without requiring payment at the time of visit and then bill Fortis directly for services after the fact.

CareFirst began accepting Fortis students as patients at the end of 2019. As instructed, CareFirst charged students nothing at the time of visit and sent its invoices to Fortis for payment instead. Since that time, CareFirst has treated nearly a thousand Fortis students (several of them multiple times), but Fortis has yet to pay for a single one of their visits. Currently, CareFirst is owed **$115,381.00** for its treatment of Fortis students over a two-year period.

My client had previously been engaged in discussions with both of you regarding payment of its past due invoices, but for reasons unknown those discussions ended—very abruptly—about a month ago. Since that time, neither of you has responded to any inquiry by my client as to when it will be paid.

CareFirst has attempted to resolve this matter amicably. It has asked to me to reach out to you to give you one more chance to continue this discussion outside of litigation. Please contact me directly at (513) 265-7982 upon receipt of this letter to discuss this matter further. I look forward to your call.

Sincerely,

LINDHORST & DREIDAME

Christopher H. Hurlburt

CHH:amd

Exhibit A

Amount: $23,479.00
Account: 8765217718
Bank Number: 07192328

Sequence Number: 4492698538
Capture Date: 12/24/2020
Check Number: 3300635

THIS CHECK IS VOID WITHOUT A MICRO... PLUS A BRIGHT & FLUORESCENT WATERMARK ON THE BACK - HOLD AT ANGLE TO VIEW

Education Affiliates DBA Fortis College – Columbus
4151 Executive Parkway
Suite 240
Westerville, OH 43081

Bank of America
Chicago, IL 60603
2-3/710

CHECK# 3300635
DATE 1 2 0 8 2 0 2 0
       M M D D Y Y Y Y

*******23,479.00

Authorized Signature

PAY Twenty-Three Thousand Four Hundred Seventy-Nine and 00/100----------------

$23,479.00

TO THE
ORDER OF
CG MEDICAL ASSOCIATES
7300 BEECHONT AVE
CINCINNATI, OH 45230-4119

⑈3300635⑈ ⑆071912284⑆ 876521771⑈

| | Bank # | Endrs Type | TRN | RRC | Bank Name |
|---|---|---|---|---|---|
| | 31000053 | Rtn Loc/BOFD | Y | | PNC Bank National As |
| | 11300016 | Pay Bank | N | | |

Electronic Endorsements

| Date | Sequence | | |
|---|---|---|---|
| 12/23/2020 | 000200776627 | | |
| 12/24/2020 | 00449269853B | | |

Exhibit B

Amount:           $23,479.00
Account:          8765217718
Bank Number:      07192328

Sequence Number: 4492698538
Capture Date:     12/24/2020
Check Number:     3300635

20201223 000200776627 07000104010

20201223 000200776627 07000104010

PAY TO THE ORDER OF
PNC BANK
CINCINNATI, OH 45263-1206
041000124
FOR DEPOSIT ONLY
☐ CHECK FOR DEPOSIT ONLY
CG MEDICAL
4260256895

Electronic Endorsements

| Date | Sequence | Bank # | Endrs Type | TRN | RRC | Bank Name |
|------|----------|--------|------------|-----|-----|-----------|
| | | | Rtn Loc/BOFD | | | PNC Bank National As |
| 12/23/2020 | 000200776627 | 31000053 | Pay Bank | Y | | |
| 12/24/2020 | 0044926985 38 | 11300016 | | N | | |

Amount:        $8,504.00
Account:       8765217718
Bank Number:   07192328

Sequence Number: 5292475528
Capture Date:    03/05/2020
Check Number:    378360

THIS CHECK IS VOID WITHOUT A PURPLE & BLUE DESIGN AND BACKGROUND PLUS A SECURE & THUMBPRINT WATERMARK ON THE BACK. HOLD AT ANGLE TO VIEW.

Education Affiliates DBA Fortis College - Columbus
4151 Executive Parkway
Suite 240
Westerville, OH 43081

Bank of America
Chicago, IL 60603

2-3/710

CHECK#      378360
DATE 0 2 1 4 2 0 2 0
     M M D D Y Y Y Y

********8,504.00

PAY Eight Thousand Five Hundred Four and 00/100--------------

TO THE     CAREFIRST URGENT CARE WESTERVILLE
ORDER OF   5965 S SUNBURY RD
           WESTERVILLE, OH 43081

_____
Authorized Signature

⑈378360⑈ ⑆071923284⑆ 8765217718⑈

Electronic Endorsements
Date        Sequence        Bank #      Endrs Type    TRN   RRC   Bank Name
03/05/2020  005292475528    11300016    Pay Bank      N           PNC Bank National As
03/04/2020  000300787302    31000053    Rtn Loc/BOFD  Y



Amount:            $8,504.00
Account:           8765217718
Bank Number:       07192328

Sequence Number:   5292475528
Capture Date:      03/05/2020
Check Number:      378360

Electronic Endorsements
Date           Sequence          Bank #       Endrs Type    TRN    RRC    Bank Name
03/05/2020     005292475528      11300016     Pay Bank      N             PNC Bank National As
03/04/2020     00030078302       31000053     Rtn Loc/BOFD  Y



January 11, 2022

Mr. Christopher H. Hurlburt, Esq.
Lindhorst & Dreidame
312 Walnut Street
Suite 3100
Cincinnati, OH 45202
*SENT BY EMAIL*

       Re: <u>CG Medical Associates, Inc., d/b/a CareFirst Urgent Care</u>

Dear Chris,

As you know, I represent Fortis College – Columbus, located at 4151 Executive Parkway, Suite 120, Westerville (Columbus), OH 43081 ("School"). I am the Vice President and General Counsel for Education Affiliates Inc., which is the ultimate owner of the School. As background, the School provides career education and training to individuals in central Ohio and the greater metropolitan Columbus, OH area who are interested in the nursing, medical and healthcare career fields.

You and I have been speaking and corresponding since on or about mid-November 2021, after receipt by the School of a letter from you, dated November 5, 2021, seeking to collect $115,381 in monies which are allegedly owed to your client, CG Medical Associates ("CG").

As I have mentioned previously, the School has been willing to remit the amounts which may be owed to CG, but it has not been able to determine with any degree of certainty the precise amount which is owed. Despite multiple prior attempts by the School to meet with CG personnel, the School has not been furnished with clear documentation which allows verification. Instead, the School has been provided with literally hundreds of invoices, or other documents, many of which have been found to be either incomplete or incorrect, e.g., duplicate claims. CG representatives themselves have acknowledged that their records are faulty.

Unfortunately, this matter has now progressed beyond a simple inability to determine the amount owed between the School and CG. We now know that there are 3rd parties that CG had engaged - and that the School has no connection to – that are now inappropriately billing and, in some cases, threatening students and staff of the School for amounts that should have been paid to those third parties by CG. This is wholly inappropriate, and must be addressed immediately. Moreover, to make matters even more complicated, in some cases, to forestall aggressive collection activity, School students or staff paid amounts directly to the third parties (or their collection agencies) for services that CG had not properly or timely paid to the third-party providers. Quite obviously, any amounts paid to CG vendors (or their collection agencies) which CG should have paid for must be deducted from any amounts that CG may otherwise have been owed. However, at this point, due to the obtuse billing and invoicing practices of CG, and the multiple invoices which have been sent by multiple parties, the School does not have a clear record of what has been billed, or paid, to these third parties.

Given the multiple concerns at issue here, we thought it would be helpful to discuss each of them separately, as we do below.

Accordingly, we set out below what the School is seeking, and expects.

Exhibit C

## Item 1 – Complete Spreadsheet of Items Owed

We asked your client on or about November 22, 2021 to provide us with an excel spreadsheet which would allow the School, and its accountants, to determine with certainty the amount which may be owed to CG by the School. At a minimum, as we requested, the spreadsheet needed to list, by patient name, for each amount owed, the amount, the date of service, a description of the service provided, the charge for that service and the location of the service.

While we acknowledge that your client has provided us with an excel spreadsheet which shows some of the information above, the information furnished does not provide us, for each patient and date, with a description of the services provided. Accordingly, we remain unable to determine if amounts for the same services were billed multiple times. Based on prior documentation provided by your client, which was previously discussed with your client, multiple duplicative entries in your client's billing was discovered.

We understand that your client has said that it cannot provide the information showing, by date and patient, a description of the services provided. Your client has instead asked the School to recreate the billings from your client. This simply cannot be the case. These are medical records that reflect services billed for.

***REQUEST 1: We must insist that your client provide this basic information in a form that is complete, not in parts that we have to assemble.*** That is, in a digital spreadsheet, a list, by name, of all patients (students or employees) of the School who were treated by CG, listing, by patient name, the date of service, a description of the service provided, the charge for that service and the location of the service. Further, based on new information that has now become known to us, we are now asking for additional information on this spreadsheet. That is, if third-party services were used, such as Quest Diagnostics, that should be noted on each applicable treatment date. As noted earlier, and as discussed more thoroughly below, we understand that some payments may have been made by our students or staff directly to Quest Diagnostics – for services purportedly rendered by your client. This additional information from you will help us address whether payments have now been made, either by students or staff, for services that were otherwise billed to the School by CG.

## Item 2 – Prior Payments of the School

You have informed us that your client has told you that its records reflect that no payments were ever made by the School. That is simply not true. Attached to this letter, as Exhibit 1, is documentation of 2 payments made by the School to your client:

> Payment by check dated 12/08/2020 – in the amount of $23,479
> Payment by check dated 02/14/2020 – in the amount of $8,504

The documentation demonstrates that these checks - for a total of $31,983 – were in fact cashed by your client.

We would expect that your client's records would reflect the payment of these amounts.

***REQUEST 2: We request that your client acknowledge and agree that the above-described payments were made by the School, and received by your client.***

Importantly, based on new information available to the School, we now have additional concerns that must be addressed.

## Item 3 - Billings by Quest Diagnostics

Our faculty and students are now receiving - directly from Quest Diagnostics - billings for services that were provided by your client, and for which payment was to be made to Quest Diagnostics by your client. An example of one such billing is attached to this letter as Exhibit 2.

The agreement between your client and the School, as we understand it, was for your client to provide these services, and invoice the School. No student or staff at the School was to be billed for, or personally responsible for, these services. To our knowledge, at no time did the parties ever agree that the School's reluctance to remit payment as a result of invoice issues from your client would allow your client, or its subcontractors, to invoice our student or staff directly - or expect direct payment from our students or staff.

We are greatly concerned that your client's actions in allowing a third party subcontractor to collect billing information on our students and staff, and then allowing these third parties, who the students and staff have not contracted with, to invoice and pursue collections activities, may be both a violation of our contract, and a violation of applicable law.

*REQUEST 3: We request that your client provide a copy of the contract that it is working from, and point out to us where they believe that the contract permits the direct contact and billing from third party providers of your client to School students and staff.*

## Item 4 – Collection Agency Actions

In addition to the invoices being received by our students and staff from Quest Diagnostics, students and staff are also receiving letters from debt credit collection agencies demanding payment for unpaid invoices from Quest – invoices that are the obligation of your client. Attached to this letter, as Exhibit 3, is an example of such a credit collection agency demand.

The debt collection agencies are frightening our students and staff, and they are unreasonably threatening adverse credit consequences for amounts that have not been paid by the contracting party – your client. As I'm sure that you understand, these actions may be violations of several applicable laws.

*REQUEST 4: We request that your client contact all debt collection agencies that are now pursuing our students and staff and demand:*

1. *that all such activities cease immediately;*
2. *A list of all School student or staff contacted by the debt collection agency, along with an accounting of any amounts collected by the debt collection agency by name and date;*
3. *A list of any negative reports made by the debt collection agencies to credit agencies relating to the School's students and staff; and*
4. *A written, prompt plan to eliminate all such negative reports from the credit records of our students and staff.*

Obviously, any payment by students or staff to Quest Diagnostics, or any third-party debt collection agency, will reduce the amount which will be reimbursed to your client.

## Item 5 – Improper Health Insurance Claims

In addition to the above, we are in receipt of multiple "Health Insurance Claim Forms" that we have reason to believe were prepared from information furnished by your client, and submitted to various insurance companies. These forms may have been submitted by your client, or Quest Diagnostics, based on information furnished by your client. An example of one such form is attached to this letter as Exhibit 4. Any claim for insurance reimbursement for services rendered to our students and staff is, at best, improper. These were not insurable claims. These amounts were for charges to be paid by the School, once properly billed and invoiced. Further, any such claims, if paid at all, would mean that your client was receiving payment from multiple parties for the same services.

***REQUEST 5: We request that your client provide us with a list of all such Health Insurance Claim Forms that have been submitted to any third party, noting the date of the claim, the name of the third party insurance company (or other party) the claim was submitted to, the amount of the claim, and whether or not that claim was paid, in whole or in part.***

## Additional Next Steps by Your Client

In addition to and to supplement the requests above, we ask that your client immediately:

1. Confirm for us that it will instruct Quest Diagnostics to cease all billing and collection efforts directed at School students or staff;
2. Confirm for us that it will instruct Quest Diagnostics to cease all collection efforts, using outside debt collection agencies, of amounts purportedly "owed" by School students or staff;
3. Confirm for us who at Quest Diagnostics is the contact for your client, and provide this individual's contact information to us;
4. Provide us with the documentation to Quest Diagnostics showing items 1 and 2 above;
5. Provide to us a list of all students and staff, prepared by Quest Diagnostics, your contractor, who have been sent collection demands from Quest Diagnostics, the amounts and dates of services for which payment has been requested, and a listing of any payments received by Quest Diagnostics as a result of these demands;
6. Provide to us a list of all students and staff, prepared by Quest Diagnostics, your contractor, who have been sent collection demands from third party collection agencies, the amounts and dates of services for which payment has been requested, and a listing of any payments received by these collection agencies as a result of these demands; and
7. Provide to us a list of all Health Insurance Claims made by your client, or anyone acting on their behalf, relating to the School's students or staff.

Based on the urgency and frequency of collection efforts by third party collection agencies, and the threats that they are making towards the School's students and staff, we must demand that the requests made in this letter be addressed immediately.

We are hopeful that the above matters may be addressed by mutual action between the parties, but we have come to the point where we must soon see tangible action or we shall be forced to seek alternative avenues for redress.

Very truly yours,

Cary A. Metz
Vice President and General Counsel
Education Affiliates Inc.

5026-D Campbell Blvd.
Baltimore, MD 21236
(443) 461-1945  office
(717) 982 – 2707 mobile

Attachments